RECEIVED
MAR 02 2026
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

MOHAMMAD SABRI and MONA SABRI,
Plaintiffs,

v.

CHUBB INDEMNITY INSURANCE COMPANY,
Defendant.

**Court File No.:** 26-cv-1689-DWF/DTS

**COMPLAINT**

---

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

**MOHAMMAD SABRI and MONA SABRI,**

Plaintiffs,

v.

**CHUBB INDEMNITY INSURANCE COMPANY,**

Defendant.

---

SCANNED
MAR 02 2026
U.S. DISTRICT COURT MPLS

**Case No.** _______________

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiffs Mohammad Sabri and Mona Sabri ("Plaintiffs" or "the Sabris"), appearing pro se, for their Complaint against Defendant Chubb Indemnity Insurance Company ("Chubb" or "Defendant"), allege as follows:

---

I. INTRODUCTION

1. This is an action for breach of an insurance contract, declaratory relief, and intentional infliction of emotional distress arising from Defendant Chubb's handling of Plaintiffs' homeowner's insurance claim following a fire that destroyed their home on March 25, 2024.

2. Nearly two years after the fire, the Sabris remain displaced from their home. Mr. Sabri was undergoing chemotherapy for cancer at the time of the fire.

3. After a formal appraisal process, the appointed umpire determined the amount of loss for dwelling reconstruction at $3,050,000, plus $610,000 for General Contractor Overhead and Profit designated "Paid When Incurred." Chubb has refused to pay the $610,000, imposing documentation demands that go beyond what the appraisal award requires and that find no support in the Policy.

4. Chubb has also refused to extend Additional Living Expenses ("ALE") coverage beyond March 25, 2026, despite the fact that Chubb's own conduct -- including filing a federal lawsuit that delayed the appraisal by approximately five months, instructing Plaintiffs not to initiate repairs under threat of spoliation, and disputing for approximately six months whether a fire-damaged steel beam required replacement -- directly caused Plaintiffs' continued displacement beyond the two-year period.

5. Plaintiffs seek payment of the $610,000 appraisal award, continuation of ALE coverage, declaratory relief establishing their rights under the Policy, and damages for the severe emotional distress Chubb's conduct has inflicted on Mr. Sabri, whose cancer recovery has been materially impaired by the stress of this ordeal.

---

## II. PARTIES

6. Plaintiff Mohammad Sabri is a natural person and citizen of the State of Minnesota. Mr. Sabri resides in Minnesota and is a named insured under the policy at issue. Mr. Sabri was undergoing chemotherapy for cancer at the time of the fire and throughout much of the claims process.

7. Plaintiff Mona Sabri is a natural person and citizen of the State of Minnesota. Mrs. Sabri resides in Minnesota and is a named insured under the policy at issue.

8. Defendant Chubb Indemnity Insurance Company is a stock insurance company incorporated under the laws of the State of New York, with its principal place of business in New Jersey.

Chubb is authorized to conduct and does conduct insurance business in the State of Minnesota. Chubb issued the homeowner's insurance policy at issue in this action.

9. At all relevant times, John Little, CPCU, AIC, ARM, acted as Chubb's Executive General Adjuster and claims representative on Plaintiffs' claim. All acts and omissions of Mr. Little described herein were performed within the scope of his employment and agency for Chubb, and Chubb is liable for those acts and omissions under the doctrine of respondeat superior.

---

III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332 (diversity of citizenship). Plaintiffs are citizens of the State of Minnesota. Defendant Chubb Indemnity Insurance Company is a citizen of the States of New York (state of incorporation) and New Jersey (principal place of business). Complete diversity of citizenship exists. The amount in controversy exceeds $75,000, exclusive of interest and costs, as Plaintiffs seek at minimum $610,000 in unpaid policy benefits plus additional damages.

11. This Court also has jurisdiction to enter declaratory relief pursuant to 28 U.S.C. Section 2201.

12. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, the insured property is located in this District, and the insurance policy was issued and performed in this District.

13. This Court has personal jurisdiction over Defendant because Chubb conducts substantial insurance business in Minnesota, issued the policy at issue in Minnesota to Minnesota residents, adjusted the claim in Minnesota, and previously filed its own lawsuit in this District arising from the same insurance claim. See Chubb Indemnity Ins. Co. v. Sabri, Sabri & Norcia, No. 25-cv-3164 (D. Minn.).

---

IV. FACTUAL ALLEGATIONS

A. The Insurance Policy

14. At all relevant times, Plaintiffs were insured under Chubb Masterpiece homeowner's policy number 1413829602, underwritten by Chubb Indemnity Insurance Company (the "Policy"). The Policy was effective from January 1, 2024 through January 1, 2025.

15. The insured property is located at 6813 Creston Road, Edina, Minnesota 55435 (the "Property").

16. The Policy provides the following relevant coverages:

| Coverage | Limit |
|---|---|
| Dwelling (House) | $5,262,000 |

| Contents | $1,331,693 |

| Other Permanent Structures | $263,100 |

| Landscaping | $263,100 |

| Additional Living Expenses | Subject to time limitations described in paragraph 21 below (no dollar cap shown in Coverage Summary) |

17. The payment basis for the dwelling under the Policy is Extended Replacement Cost. The Policy provides, in relevant part:

> "Extended replacement cost. If the payment basis is extended replacement cost, we will pay the reconstruction cost even if this amount is greater than the amount of coverage for your house as shown in the Coverage Summary or the amount of coverage for other permanent structures as shown in the Coverage Summary."

(Policy, Masterpiece Minnesota Deluxe House Coverage (Aug. 3, 2020), p. B-1.)

18. The Policy defines "reconstruction cost" as:

> "[T]he lesser of the amount required at the time of loss to repair, replace or rebuild, at the same location, your house or any other permanent structure, using like design, and materials and workmanship of comparable kind and quality."

(Policy, p. B-1.)

19. The Policy contains an appraisal clause, which provides in relevant part:

> "If you or we fail to agree on the amount of loss, you or we may demand an appraisal of the loss. Each party will select an appraiser within 20 days after receiving written request from the other. The two appraisers will select a third appraiser. If they cannot agree on a third appraiser within 15 days, you or we may request that the selection be made by a judge of a court having jurisdiction. Written agreement signed by any two of the three appraisers shall set the amount of the loss."

(Policy, Masterpiece Policy Term Special Condition (Nov. 20, 2017), p. Y-6.)

20. The Policy also provides: "However, the maximum amount we will pay for a loss is the applicable amount of coverage even if the amount of the loss is determined to be greater by appraisal." (Policy, p. Y-6.)

21. The Policy provides coverage for Additional Living Expenses ("ALE"), stating in relevant part:

> "Extra living expenses. If a covered loss makes your house or other permanent structure uninhabitable, we cover the reasonable increase in your normal living expenses that is necessary to maintain your household's usual standard of living . . . . We cover these increases to your normal living expenses for a period of time commencing with the date of loss and ending with the earliest of the following:

>

> - the reasonable amount of time required to restore your house or other permanent structure to a habitable condition;

> - the shortest amount of time required to settle elsewhere if you or members of your household permanently relocate;

> - the reasonable amount of time required to restore the house or other permanent structure to the condition it was in prior to the covered loss if you are newly constructing your house or other permanent structure or constructing additions, alterations, or renovations to your house or other permanent structure at the time of a covered loss, but we will only cover the increase in your normal living expenses incurred by you; or

> - up to two years from the date of loss, or a later date if agreed to by us."

(Policy, Masterpiece Minnesota Deluxe House Coverage (Aug. 3, 2020), p. B-5.)

22. The Policy further states: "This period of time is not limited by the expiration of this policy." (Policy, p. B-5.)

23. Upon information and belief, the Policy contains a Loss Payment provision governing the timing and conditions of Chubb's payment obligations following determination of the amount of loss. To the extent the Policy does not specify a payment deadline, Minnesota law requires insurers to pay claims promptly after the amount of loss has been determined. See Minn. Stat. Section 72A.201, subd. 6 (requiring payment within five business days after notification that insured has accepted a proposed settlement); subd. 4(3) (requiring prompt payment of undisputed portions of claims).

24. The Policy provides a $10,000 deductible, which Chubb waived because the loss exceeded $50,000.

B. The Fire and Initial Claim

25. On March 25, 2024, the Property suffered a fire that rendered it uninhabitable.

26. At the time of the fire, Plaintiff Mohammad Sabri was undergoing chemotherapy for cancer, which made it difficult for him to attend and manage repeated site visits and the claims process without assistance.

27. Plaintiffs promptly reported the loss to Chubb. Chubb assigned the claim to John Little, Executive General Adjuster. Mr. Little introduced himself to the Sabris by telephone on or about March 29, 2024, at which time Mr. Sabri informed Mr. Little that he was undergoing chemotherapy.

28. Chubb retained Joseph Sandvik of Young & Associates ("YA") to assess the dwelling loss on Chubb's behalf.

29. Plaintiffs retained Paul A. Norcia of Norcia Insurance Consultants solely as an estimator and consultant -- not as a public adjuster. One of the reasons for Mr. Norcia's involvement was that Mr. Sabri's cancer treatment made it difficult for him to manage the repeated site visits without assistance.

30. Mr. Norcia's Minnesota public adjuster license had expired on January 31, 2023. Mr. Norcia repeatedly disclosed this fact and made clear that he was not acting as a public adjuster. Mr. Sabri likewise stated, in Mr. Little's presence, that Mr. Norcia was acting only as his consultant and estimator.

31. Despite knowing that Mr. Norcia's public adjuster license was expired and that Mr. Norcia was not acting in that capacity, Mr. Little repeatedly urged Mr. Sabri to formally retain Mr. Norcia as a public adjuster during site visits and on several other occasions. On each occasion, Mr. Norcia declined and reiterated that he was not licensed and could not act as a public adjuster.

32. Additionally, on multiple occasions, Mr. Little stated that he preferred Mr. Norcia's presence during interactions involving Mr. Sabri because Mr. Little did not feel comfortable being alone with Mr. Sabri.

C. Chubb's Delays During Claims Adjustment

33. In the months following the fire, Chubb and its representatives conducted multiple site visits, inspections, and investigations.

34. Mr. Norcia prepared a detailed estimate of damages to the Property totaling $4,340,966.19. Chubb's estimator, YA, prepared an initial estimate totaling $2,570,376.91 (before overhead and profit), with a revised estimate of $3,039,725.63 including overhead and profit of $506,578.36.

35. The parties attempted to negotiate a resolution. On or about December 19, 2024, Chubb issued an initial undisputed payment of $2,570,376.91 for dwelling reconstruction. On the same date, YA provided a revised estimate of $3,039,725.63 (including overhead and profit) as a settlement offer.

36. A significant dispute arose concerning a steel beam approximately 22 feet in length that had deflected due to extreme heat from the fire. Chubb disputed whether the beam required replacement, maintaining instead that it could be repaired by welding stiffeners.

37. The City of Edina required a signed engineering plan specifying how the beam would be addressed before reconstruction could proceed. Despite repeated requests, neither Chubb nor its engineering firm, Young & Associates, would sign off on a prescriptive repair.

38. This steel beam dispute consumed approximately six months of the reconstruction timeline. Ultimately, the appraisal panel determined that the beam must be replaced, a conclusion later clarified in correspondence following issuance of the appraisal award.

39. On information and belief, Mr. Sabri was instructed by Chubb's adjuster and/or by his appraiser, Kyle Brown of Gavnat & Associates, not to initiate repairs prior to completion of the appraisal, under the rationale that doing so could constitute spoliation of evidence and prejudice Chubb's position. This instruction was communicated verbally during the claims adjustment and appraisal process. As a result, Mr. Sabri reasonably refrained from beginning reconstruction.

40. Chubb thus simultaneously (a) instructed Plaintiffs not to rebuild pending appraisal completion; (b) delayed the appraisal through litigation (as described below); and (c) later criticized Plaintiffs for the slow pace of reconstruction and sought to enforce the two-year ALE limit.

D. The Appraisal Process

41. On or about February 20, 2025, Plaintiffs demanded appraisal pursuant to the Policy's appraisal clause. Plaintiffs named Kyle Brown of Gavnat & Associates as their appraiser.

42. On or about March 14, 2025, Chubb appointed Ray Pawlak of GM Consulting USA LLC as its appraiser. The agreed scope of the appraisal included reconstruction costs for the dwelling and the claim for additional living expenses.

43. The two appraisers selected Walt Cook as the umpire. An appraisal hearing was originally scheduled for July 2, 2025, with pre-hearing submissions due June 18, 2025.

E. Chubb's Federal Lawsuit and Its Effect on the Appraisal

44. On or about June 12, 2025, Mr. Little emailed the Sabris objecting to Mr. Norcia's participation in the appraisal hearing, citing Mr. Norcia's expired public adjuster license. This objection was made despite Mr. Little's own repeated prior urging that Mr. Sabri formally retain Mr. Norcia as a public adjuster, and despite Mr. Little's knowledge throughout the claims process that Mr. Norcia's license had expired.

45. On June 17, 2025, Plaintiffs' daughter Samrina Sabri responded on the family's behalf, refusing to pause the appraisal and stating that the Sabris would submit their materials by the June 18 deadline.

46. On June 17, 2025, Mr. Little unilaterally emailed the appraisal panel that Chubb had paused the appraisal. On June 18, 2025, Mr. Norcia submitted the Sabris' pre-appraisal positions to the panel as scheduled.

47. On or about June 23, 2025, the umpire paused the appraisal and rescheduled submissions for July 30, 2025, with a hearing set for August 27, 2025.

48. On July 30, 2025, Mr. Sabri objected to the delay in writing, explaining that Mr. Norcia had been retained strictly as a consultant and estimator.

49. On August 8, 2025, rather than proceeding with the appraisal, Chubb filed a federal lawsuit against Plaintiffs and Mr. Norcia: Chubb Indemnity Insurance Company v. Sabri, Sabri & Norcia, Case No. 25-cv-3164 (D. Minn.), assigned to Chief Judge Patrick J. Schiltz and Magistrate Judge Steven E. Gilbert.

50. In that lawsuit, Chubb sought a declaratory judgment that it need not participate in the appraisal process where Mr. Norcia -- whom Chubb alleged was acting as an unlicensed public adjuster -- was involved. Chubb also sought a temporary restraining order ("TRO") to postpone the appraisal until the court ruled.

51. On September 17, 2025, Chubb filed its TRO motion. On September 25, 2025, Chief Judge Schiltz denied the TRO. On November 5, 2025, Chubb voluntarily dismissed the entire action without any adjudication on the merits.

52. Chubb's lawsuit delayed the appraisal approximately five months. The appraisal hearing was originally scheduled for July 2, 2025. Due to the Norcia objection beginning June 12, 2025, the subsequent rescheduling, and the filing and pendency of Case No. 25-cv-3164, the appraisal hearing did not take place until approximately October-November 2025, and the umpire did not issue the award until December 10, 2025.

53. The lawsuit also had a chilling effect on the appraisal process itself. Mr. Norcia, who was personally named as a defendant in the federal lawsuit, experienced severe anxiety during the appraisal proceedings. He was visibly shaken, had difficulty speaking freely, and felt that any statement he made could be used against him in the pending litigation. This materially impaired Mr. Norcia's ability to participate fully and openly in the appraisal as Plaintiffs' estimator and consultant.

54. During the appraisal proceedings, Mr. Norcia was subjected to leading and adversarial questioning designed to elicit statements suggesting that he had acted as a public adjuster.

55. During the appraisal hearing, Mr. Sabri confronted Mr. Little in the presence of other attendees, stating that Mr. Little had repeatedly suggested that Mr. Sabri retain Mr. Norcia as a public adjuster despite Mr. Little's knowledge that Mr. Norcia was no longer licensed. Mr. Sabri further stated that Chubb's filing of the federal lawsuit naming Mr. Norcia personally was intended to intimidate Mr. Norcia and suppress his participation in the appraisal process.

F. The Appraisal Award

56. On December 10, 2025, the umpire issued the Appraisal Award (the "Award").

57. The Award determined the following amounts for the dwelling claim:

| Category | RCV Amount |
|---|---|
| Mitigation/Containment/Demo | $321,669.63 |

| Reconstruction | $2,728,330.37 |

| **Base Award Total** | **$3,050,000.00** |

| General Contractor Overhead & Profit ("Paid When Incurred") | $610,000.00 |

58. The Award designated the $610,000 in General Contractor Overhead & Profit as "Paid When Incurred," with the following notation:

> "The inclusion of General Contractor Overhead & Profit acknowledges that the scope of repair would ordinarily necessitate general contractor coordination. However, as no GC was retained by the insured and the insured testified he's the contractor; the O&P portion is designated as 'paid when incurred' and shall be disbursed only upon substantiation of such expense."

59. The Award noted that ALE and contents were not evaluated by the appraisal panel at that time, as an agreed request was made to the panel for those items from both parties.

60. Depreciation on the reconstruction portion was $479,623.09, yielding an ACV of $2,570,376.91. Chubb confirmed that because Plaintiffs began repair or rebuild within 180 days of the loss, the payment basis is reconstruction cost without withholding of depreciation.

G. Chubb's Refusal to Pay the $610,000 O&P; Award

61. On December 31, 2025, Chubb issued a payment of $282,394.47, representing the difference between the $3,050,000 base award and prior payments of $2,767,605.53 under the dwelling ($2,580,115.91) and debris removal ($187,489.62) claim features.

62. In the same December 31, 2025 letter, Chubb stated that it would not pay the $610,000 General Contractor Overhead & Profit unless Plaintiffs submitted, within 45 days (by February 14, 2026), the following documentation:

> "Properly executed and notarized general contractor agreement for the reconstruction of fire damaged property. It should include detail and itemized estimate, subcontractor bids, permits, architectural Drawings/Plans, payment draw schedule and a Project Schedule which details description and representation of how the contractor plans to phase construction activities, along with anticipated completion dates."

63. Chubb threatened that if Plaintiffs did not provide this documentation by February 14, 2026, "we will assume no additional dwelling and debris removal claims are being made, and we will close these claim features."

64. This demand was reiterated in Chubb's January 13, 2026 letter.

65. The Award's "Paid When Incurred" designation requires "substantiation of such expense" -- i.e., proof that overhead and profit costs have been or are being incurred. It does not require that Plaintiffs hire a third-party general contractor.

66. Chubb's documentation demands go well beyond what the Award requires. The Award calls for "substantiation" of O&P expense. Chubb demands a "properly executed and notarized general contractor agreement," itemized estimates, subcontractor bids, permits, architectural drawings, a payment draw schedule, and a project schedule. The Policy contains no provision conditioning payment of overhead and profit on the insured hiring a third-party general contractor or producing such documentation.

67. Plaintiff Mohammad Sabri is acting as the owner-builder for the reconstruction project. In that capacity, Mr. Sabri has incurred and continues to incur costs that constitute overhead and profit, including project management and coordination of multiple subcontractors, obtaining permits, scheduling inspections, arranging financing, procuring materials, and managing the overall construction project. These costs are substantiable through records of Mr. Sabri's actual expenditures and activities.

68. Chubb's own estimator, Young & Associates, included $506,578.36 in overhead and profit ($253,289.18 overhead + $253,289.18 profit) in its December 19, 2024 revised estimate of $3,039,725.63, thereby recognizing that O&P is a component of the reconstruction cost for this loss.

69. In the alternative, to the extent the "Paid When Incurred" designation purports to create a condition precedent to payment that is not found in the Policy, it exceeds the scope of the umpire's authority. The appraisal clause empowers the appraisers and umpire to "set the amount of the loss." It does not empower them to impose conditions on when or how the insurer must pay that loss amount. If the "Paid When Incurred" condition is invalid, the $610,000 is due as part of the reconstruction cost determined by the Award.

70. February 14, 2026 has passed. Chubb has not paid the $610,000.

H. Chubb's Refusal to Extend ALE Beyond March 25, 2026

71. As a result of the fire, the Property has been uninhabitable since March 25, 2024. The Sabris have been displaced and living in temporary housing continuously since that date.

72. Chubb has paid approximately $333,029.40 in ALE through Homelink, a temporary housing provider, directly to the landlords of the Sabris' temporary residences.

73. As set forth in paragraph 21 above, the Policy provides that ALE coverage ends at the earliest of several events. The two-year period from the March 25, 2024 date of loss expires on March 25, 2026. However, the Policy expressly provides that Chubb may agree to "a later date."

74. In its November 14, 2025 letter, Chubb stated: "We have agreed to pay Additional Living Expenses (ALE) up to the two-year policy limit, which will be March 25, 2026, and have instructed Homelink to pay the landlords through that date. Since you signed a one-year lease, you will be responsible for temporary rental expenses beginning March 26, 2026."

75. This position was reiterated in Chubb's December 31, 2025 and January 13, 2026 letters.

76. In its January 23, 2026 letter, Chubb stated: "We are not agreeable to appraise ALE costs after March 25, 2026, as such costs are a coverage issue, as our coverage position is that the ALE coverage ends as of March 25, 2026."

77. Chubb's refusal to agree to a later date, and its position that the two-year limit is an absolute cutoff, is unreasonable given the following facts:

78. **First. Chubb's federal lawsuit caused approximately five months of delay.** Chubb's federal lawsuit (Case No. 25-cv-3164), filed on August 8, 2025 and not voluntarily dismissed until November 5, 2025, delayed the appraisal process. The appraisal hearing was originally scheduled for July 2, 2025; the Award was not issued until December 10, 2025. This delay

postponed the funding necessary for reconstruction.

79. **Second, Plaintiffs were instructed not to rebuild pending the appraisal.** On information and belief, Mr. Sabri was instructed by Chubb and/or by his appraiser, Kyle Brown, not to initiate repairs prior to completion of the appraisal, under the rationale that doing so could constitute spoliation of evidence and prejudice Chubb's position. Chubb cannot instruct an insured not to rebuild and then enforce a two-year ALE time limit that expires while the insured is complying with that instruction.

80. **Third, the steel beam dispute consumed approximately six months.** The City of Edina required a signed engineering plan addressing the fire-damaged steel beam. Neither Chubb nor Young & Associates would sign off on the repair. The umpire ultimately determined the beam must be replaced. This dispute alone consumed approximately six months of the reconstruction timeline.

81. **Fourth, Chubb's refusal to pay the $610,000 O&P further impedes reconstruction.** Without full payment of the amounts determined by the Award, Plaintiffs lack the funds to complete reconstruction.

82. The cumulative effect of these delays is that as of the date of this Complaint, reconstruction has not been completed, the Property remains uninhabitable, and the Sabris remain displaced through no fault of their own.

83. Chubb is equitably estopped from enforcing the two-year ALE limit. An insurer may not, through its own acts and omissions, create the conditions that prevent timely completion of repairs and then invoke a time limitation to deny coverage for the resulting extended

displacement. See Midwest Family Mut. Ins. Co. v. Wolters, 831 N.W.2d 628 (Minn. 2013) (insurer's conduct may estop it from enforcing policy conditions).

84. Additionally, the first alternative endpoint for ALE -- "the reasonable amount of time required to restore your house or other permanent structure to a habitable condition" -- is a factual question. Given the extent of the damage, the steel beam dispute, the appraisal delays, and the ongoing O&P dispute, the reasonable time required to restore the Property may well exceed two years, independent of any agreement by Chubb.

I. Impact on Mr. Sabri

85. Throughout the nearly two-year claims process, Mr. Sabri has been simultaneously managing his cancer treatment and recovery while being displaced from his home, navigating a complex insurance claim, and being sued in federal court by his own insurer.

86. Chubb was aware from the outset of the claim -- since at least the March 29, 2024 phone call between Mr. Little and Mr. Sabri -- that Mr. Sabri was undergoing chemotherapy.

87. The stress caused by Chubb's conduct has materially impaired Mr. Sabri's cancer recovery. Mr. Sabri has experienced worsening anxiety, sleep disruption, and difficulty adhering to his treatment regimen as a direct result of the uncertainty and pressure created by Chubb's actions, including the filing of the federal lawsuit, the threat of losing housing, and the ongoing withholding of funds necessary to rebuild the family home.

88. These effects are not the ordinary stress of a coverage dispute. They are the product of specific, targeted conduct directed at a policyholder Chubb knew to be in a uniquely

vulnerable medical condition.

---

V. CLAIMS PAYMENT SUMMARY

89. As of January 13, 2026, Chubb has made the following payments on Plaintiffs' claim:

| Coverage | Agreed Amount | Paid Amount |
|---|---|---|
| Dwelling (Reconstruction) | $2,728,330.37 | $2,728,330.37 |
| Debris Removal (Mitigation/Containment) | $321,669.63 | $321,669.63 |
| Contents | $969,684.01 | $969,684.01 |
| Additional Living Expenses | $330,021.32 | $333,029.40 |
| **Total Paid** | | **$4,352,713.41** |

90. Additionally, Chubb agreed to settle the contents claim for an additional $162,500 (for a total contents settlement of $1,132,184.01), pending execution of a release by both Plaintiffs.

91. The following amounts remain unpaid and in dispute:

| Item | Amount | Status |
|---|---|---|

| | | |
|---|---|---|
| General Contractor Overhead & Profit | $610,000.00 | Refused by Chubb |
| ALE beyond March 25, 2026 | Ongoing (~$12,000-$13,000/month) | Refused by Chubb |

---

## VI. CLAIMS FOR RELIEF

### COUNT I: BREACH OF CONTRACT -- REFUSAL TO PAY $610,000 OVERHEAD & PROFIT

92. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

93. The Policy is a valid and enforceable contract between Plaintiffs and Chubb.

94. Plaintiffs have performed all conditions required of them under the Policy, including promptly reporting the loss, cooperating with Chubb's investigation, submitting a Sworn Proof of Loss, and participating in the appraisal process.

95. The appraisal process concluded on December 10, 2025, with the umpire issuing an Award determining the amount of loss for the dwelling at $3,050,000 base plus $610,000 in General Contractor Overhead & Profit.

96. Under the Policy's appraisal clause, "[w]ritten agreement signed by any two of the three appraisers shall set the amount of the loss." The Award constitutes a binding determination of the amount of loss.

97. The Award designates the $610,000 O&P as "Paid When Incurred" and requires "substantiation of such expense." Plaintiffs do not dispute that they must substantiate their O&P costs. However, Chubb has imposed documentation requirements that far exceed what the Award calls for and that find no support in the Policy. The Award requires "substantiation of such expense"; Chubb demands a third-party general contractor agreement, itemized estimates, subcontractor bids, permits, architectural drawings, a payment draw schedule, and a project schedule -- none of which are conditions of the Policy.

98. The Policy does not require an insured to hire a third-party general contractor as a condition of receiving overhead and profit. Mr. Sabri is acting as the owner-builder for the reconstruction and has incurred and continues to incur costs that constitute overhead and profit, including project management and coordination of subcontractors, procurement, permitting, scheduling, and financing. These costs are substantiable through records of Mr. Sabri's actual expenditures and activities.

99. In the alternative, to the extent the Award's "Paid When Incurred" designation purports to create a condition precedent to payment not found in the Policy, it exceeds the scope of the umpire's authority under the appraisal clause. The clause empowers the appraisers and umpire only to "set the amount of the loss," not to impose conditions on when or how that amount is paid. If the "Paid When Incurred" condition is invalid, the $610,000 is due as part of the reconstruction cost determined by the Award.

100. Chubb's own estimator, Young & Associates, included $506,578.36 in overhead and profit in its December 19, 2024 revised estimate of $3,039,725.63, recognizing that O&P is a component of the reconstruction cost for this loss.

101. By refusing to pay the $610,000, Chubb has breached the Policy.

102. As a direct and proximate result of Chubb's breach, Plaintiffs have been damaged in the amount of $610,000, plus prejudgment interest as allowed by Minn. Stat. Section 549.09 from December 10, 2025 (the date of the Award).

COUNT II: BREACH OF CONTRACT -- REFUSAL TO EXTEND ADDITIONAL LIVING EXPENSES

103. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

104. The Policy provides ALE coverage for a period ending at the earliest of several specified events, as set forth in paragraph 21 above. One such endpoint is "up to two years from the date of loss, or a later date if agreed to by us." Another is "the reasonable amount of time required to restore your house or other permanent structure to a habitable condition."

105. The two-year period from the March 25, 2024 date of loss expires on March 25, 2026.

106. The reconstruction of the Property has not been completed, and the Property remains uninhabitable. Plaintiffs remain displaced.

107. The delay in completing reconstruction is directly attributable to Chubb's own conduct:

a. **Chubb's federal lawsuit** delayed the appraisal approximately five months (from the original July 2, 2025 hearing date to the December 10, 2025 Award), thereby delaying the

funding needed for reconstruction;

b. **The spoliation instruction** -- On information and belief, Chubb and/or Plaintiffs' appraiser Kyle Brown instructed Mr. Sabri not to initiate repairs pending completion of the appraisal, under the rationale that doing so could constitute spoliation of evidence, thereby preventing Plaintiffs from advancing reconstruction during the appraisal process;

c. **Chubb's steel beam dispute** consumed approximately six months of the reconstruction timeline because neither Chubb nor Young & Associates would sign off on a prescriptive repair, and the City of Edina required a signed engineering plan before reconstruction could proceed; and

d. **Chubb's withholding of the $610,000 O&P** further impedes Plaintiffs' ability to fund and complete reconstruction.

108. Chubb is equitably estopped from enforcing the two-year ALE limit. Chubb's own conduct -- filing a federal lawsuit that was ultimately denied and voluntarily dismissed, the spoliation instruction, the protracted steel beam dispute, and the withholding of $610,000 -- directly caused the delay that has prevented Plaintiffs from completing reconstruction and returning home within two years.

109. Additionally, the "reasonable amount of time required to restore [the] house . . . to a habitable condition" -- the first endpoint listed in the ALE provision -- is a factual question that has not been determined. Given the scope of the damage, the delays attributable to Chubb, and the ongoing O&P dispute, the reasonable restoration time for this Property may exceed two years independently of any agreement by Chubb to extend coverage.

110. By refusing to extend ALE beyond March 25, 2026, and by refusing to agree to a later date despite being a primary cause of the delay requiring such extension, Chubb has breached the Policy.

111. As a direct and proximate result of Chubb's breach, Plaintiffs will be damaged in the amount of their ongoing additional living expenses (approximately $12,000-$13,000 per month) from March 26, 2026 through the date the Property is restored to a habitable condition and Plaintiffs can return home.

COUNT III: DECLARATORY JUDGMENT

112. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

113. An actual controversy exists between Plaintiffs and Chubb within the meaning of 28 U.S.C. Section 2201, concerning the parties' respective rights and obligations under the Policy with respect to the following issues:

114. **O&P Payment Obligations.** A dispute exists regarding whether Chubb may condition payment of the $610,000 O&P determined by the appraisal award on Plaintiffs hiring a third-party general contractor, or whether the Policy and Award require only that Plaintiffs substantiate their actual O&P expenses, including those incurred by Mr. Sabri as owner-builder.

115. **ALE Coverage Duration.** A dispute exists regarding the termination date of ALE coverage. Chubb contends that ALE terminates absolutely on March 25, 2026, and

characterizes any coverage beyond that date as a "coverage issue" not subject to appraisal. Plaintiffs contend that: (a) the "reasonable amount of time required to restore" the Property to a habitable condition is a factual question that may extend beyond two years; (b) Chubb is equitably estopped from enforcing the two-year limit when its own conduct caused the delay; and (c) Chubb's refusal to agree to "a later date" under the circumstances of this case constitutes bad faith exercise of the discretion granted by the Policy.

116. **Scope of Appraisability.** Chubb has refused to appraise ALE costs beyond March 25, 2026, characterizing them as a "coverage issue." A dispute exists regarding whether the amount of ALE loss attributable to the period beyond two years -- including whether the "reasonable amount of time required to restore" the Property extends beyond that date -- is a question of "amount of loss" subject to appraisal under the Policy, or a "coverage issue" outside the appraisal process.

117. Plaintiffs request a declaratory judgment from this Court establishing:

a. That the $610,000 O&P determined by the Award is payable upon substantiation of actual O&P costs, including those incurred by an owner-builder, and that Chubb may not condition payment on the hiring of a third-party general contractor;

b. That ALE coverage continues beyond March 25, 2026 for the reasonable time required to restore the Property to a habitable condition, taking into account delays attributable to Chubb's conduct;

c. That Chubb is equitably estopped from enforcing the two-year ALE limit given the delays its own conduct caused; and

d. That the duration of ALE, to the extent it turns on the "reasonable amount of time required to restore" the Property, is a question of "amount of loss" subject to appraisal under the Policy.

COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

118. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

119. Chubb's conduct toward Plaintiffs went beyond the bounds of an ordinary insurance coverage dispute. Chubb engaged in specific, targeted conduct directed at policyholders it knew to be in a uniquely vulnerable position:

a. **Filing a federal lawsuit against Mr. Sabri while he was undergoing cancer treatment.** Chubb filed Case No. 25-cv-3164 against its own policyholder to block the contractual appraisal process. Chubb was aware, since at least March 29, 2024, that Mr. Sabri was undergoing chemotherapy. The Court denied Chubb's TRO, and Chubb voluntarily dismissed the action before any merits adjudication. The lawsuit served no purpose other than to delay the appraisal and pressure the Sabris.

b. **Naming Mr. Norcia as a defendant to chill his participation.** Chubb named Plaintiffs' estimator and consultant personally as a defendant, after Chubb's own adjuster had repeatedly urged Mr. Sabri to retain Mr. Norcia as a public adjuster despite knowing Mr. Norcia was unlicensed. The chilling effect was demonstrable: Mr. Norcia was visibly shaken during the appraisal, had difficulty speaking freely, and stated that his ability to participate was materially impaired by fear that his statements could be used against him in the pending litigation.

c. **Accusing the Sabris of evading service of process.** In the federal lawsuit, Chubb's attorneys alleged that the Sabris and Mr. Norcia were evading service and sought to serve them by publication, adding an accusation of dishonesty to a family already burdened by displacement and illness.

d. **Threatening to terminate housing for a displaced cancer patient.** Chubb threatened to stop ALE payments and close the dwelling claim, knowing the Sabris are displaced, Mr. Sabri has cancer, and Chubb's own conduct is a primary cause of the reconstruction delay.

120. Chubb's conduct was intentional or done with reckless disregard for the probability of causing severe emotional distress. Chubb knew of Mr. Sabri's cancer diagnosis and treatment, knew the Sabris were displaced, and proceeded with its course of conduct regardless.

121. As a direct and proximate result of Chubb's conduct, Plaintiff Mohammad Sabri has suffered severe emotional distress that has materially impaired his cancer recovery. Mr. Sabri has experienced worsening anxiety, persistent sleep disruption, and difficulty adhering to his cancer treatment regimen. The stress of being sued by his own insurer, facing the threat of losing housing, and enduring nearly two years of displacement while battling cancer has taken a documented toll on Mr. Sabri's physical and psychological health. Plaintiff Mona Sabri has likewise suffered severe emotional distress from the totality of Chubb's conduct directed at her family.

122. Plaintiffs plead this Count in the alternative to Counts I and II to the extent the Court determines that the alleged conduct does not constitute breach of contract.

---

## VII. RESERVATION OF RIGHTS

123. Plaintiffs intend to seek leave to add claims and remedies available under Minnesota law, including Minn. Stat. Section 604.18, as appropriate and as the record develops.

---

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Mohammad Sabri and Mona Sabri respectfully request that this Court enter judgment in their favor and against Defendant Chubb Indemnity Insurance Company as follows:

A. On Count I, damages in the amount of $610,000, representing the unpaid General Contractor Overhead & Profit determined by the appraisal award, plus prejudgment interest as allowed by Minn. Stat. Section 549.09 from December 10, 2025;

B. On Count II, damages in the amount of Plaintiffs' additional living expenses incurred from March 26, 2026 through the date the Property is restored to a habitable condition and Plaintiffs are able to return home;

C. On Count III, a declaratory judgment as specified in paragraph 117 above, establishing Plaintiffs' rights under the Policy with respect to O&P payment, ALE duration, and appraisability;

D. On Count IV, compensatory damages for the severe emotional distress suffered by each Plaintiff, including the impact on Mr. Sabri's cancer recovery, in the amount of at least $5,000,000;

E. Pre-judgment and post-judgment interest on all amounts awarded, as provided by law;

F. Costs and disbursements of this action;

G. Such other and further relief as the Court deems just and equitable.

---

## IX. JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

---

## X. SIGNATURE BLOCK

Respectfully submitted,

Date: 3-2-26

______________________

**Mohammad Sabri**, Pro Se Plaintiff

c/o 5775 Wayzata Blvd, Ste 620

Minneapolis, MN 55416

Telephone: 612-990-5160

Email: hamoudimsabri@gmail.com

**Mona Sabri**, Pro Se Plaintiff

c/o 5775 Wayzata Blvd, Ste 620

Minneapolis, MN 55416

Telephone: 612-722-4000

Email: monasabri@me.com

---

XI. VERIFICATION

VERIFICATION OF MOHAMMAD SABRI

I, Mohammad Sabri, am a plaintiff in the above-captioned action. I have read the foregoing Complaint and know the contents thereof. The statements made therein are true and correct to

the best of my knowledge, information, and belief, except as to matters therein stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 3-2-, 2026, at HennepinCo, Minnesota.

Mohammad Sabri

VERIFICATION OF MONA SABRI

I, Mona Sabri, am a plaintiff in the above-captioned action. I have read the foregoing Complaint and know the contents thereof. The statements made therein are true and correct to the best of my knowledge, information, and belief, except as to matters therein stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 3.2, 2026, at HennepinCo, Minnesota.